IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BROTHER CONVENIENCE STORE, INC., *et al.*,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE,

    Defendant.

Case No. 1:20-cv-01346-GLR

**REPLY TO PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

The United States Department of Agriculture (the "Defendant"), by its counsel, Jonathan F. Lenzner, Acting United States Attorney for the District of Maryland, and Alan C. Lazerow, Assistant United States Attorney for that district, respectfully submits this Reply to *Plaintiffs' Response and Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment*, see ECF No. 17 (the "Opposition"):

**I. INTRODUCTION**

FNS[1] identified 140 transactions that were the starting point for a detailed administrative investigation, the result of which was FNS's decision to disqualify Brother Convenience Store, Inc. (the "Store," and together with Hesham A. Ghaleb and Maged A. Ghaleb, the "Plaintiffs"), from the Supplemental Nutrition Assistance Program ("SNAP"). The relevant question on summary judgment is whether Plaintiffs have met their burden "to raise material issues of fact as to each of the transactions set forth as suspicious by FNS." *See Kahin v. United States*, 101 F. Supp.

---

[1] Capitalized terms not otherwise defined in this Reply are given the meanings ascribed to them in the *Motion to Dismiss or, in the Alternative, for Summary Judgment*. *See* ECF No. 12.

2d 1299, 1303 (S.D. Cal. 2000); *see also Green Apple Grocery & Deli v. USDA*, No. 1:19-cv-01408, 2021 WL 533730, at *6 (D. Md. Feb. 12, 2021) (Bennett, J.) (reciting plaintiff's burden to "create a[] dispute of material fact as to each of the numerous suspicious transfers that FNS identified"). Plaintiffs fail to carry this heavy burden. Plaintiffs do not challenge the fact that each transaction occurred. Plaintiffs instead challenge the robustness of FNS's investigation, calling its actions and the data on which the Store's permanent disqualification was based "absurd," "confusing," and "purposeful hyperbole," while accusing Defendant of conducting a "trial by ambush." Such hyperbole, however, does not alter the conclusion that Plaintiffs have failed to carry their burden of raising genuine disputes of material fact as to each of the 140 challenged transactions.

For these reasons, and as explained below and in the Motion, the Court should dismiss the case under Rule 12(b)(6) or, in the alternative, grant summary judgment for Defendant under Rule 56(a).

## II. ARGUMENT

### A. THE UNDISPUTED FACTS IN THE ADMINISTRATIVE RECORD ESTABLISH THAT PLAINTIFFS TRAFFICKED IN SNAP BENEFITS

As explained in the Motion, evidence in the Administrative Record establishes that Plaintiffs trafficked in SNAP benefits. *See* Motion at pp. 23-28. Electronic benefit transfer ("EBT") data uncovered two categories of suspicious transactions probative of trafficking: (i) repetitive transaction in a set period by the same household/account (A.R. 298-99) and (ii) high-dollar transactions (A.R. 300-01).

To avoid the inescapable conclusion from these undisputed facts, Plaintiffs label Defendant's arguments "purposeful hyperbole and abstruse reasoning," complaining that "[t]he charges were issued based on a purported pattern, instead of actual evidence," as if the only evidence Defendant relied on was EBT data. *See* Opposition, at p. 5. Plaintiffs' argument

misapprehends the limited role of the ALERT system and EBT data. As the district court explained in *Nasunin v. United States*, Case No. 3:10-cv-00277, 2013 WL 1687730, at *1 (D. Alaska Apr. 17, 2013):

> The USDA monitors SNAP transactions by means of the [ALERT] system, a computer program designed to recognize suspicious spending patterns that suggest fraudulent transactions. When ALERT identifies a store with suspicious spending patterns, the USDA commences an investigation. An investigation may lead to administrative proceedings in which the store owner is afforded an opportunity to demonstrate that the suspicious transactions were not trafficking.

*See also Meredia v United States*, No. 4:13-cv-01124, 2016 WL 7736585 (S.D. Tex. Aug. 16, 2016) (rejecting an attack on reliance on EBT data gleaned from the ALERT system and explaining that "Plaintiff's argument that the use of a computer is improper to disqualify [a store] from participating in SNAP is not only legally wrong, but also misstates or misunderstands the facts of this case").

As in the above caselaw, FNS neither deferred to the ALERT system nor relied exclusively on SNAP EBT data in concluding that Plaintiffs engaged in trafficking. Instead, as explained in the Motion and as evidenced by the Administrative Record, the ALERT system alerted FNS to suspicious SNAP transactions by the Store, which FNS then investigated by, among other things, visiting and inspecting the Store, reviewing its stock and inventory, and comparing the Store to other convenience stores in the close geographic proximity.[2] Comparison of the Store's EBT data with data from two other convenience stores within a one-mile radius revealed that the Store had higher suspicious transactions in both Scan B2 and Scan F, had far more high-dollar transactions in the breakdowns by dollar amount, and had higher average transaction amounts, despite the

---

[2] In the Opposition, Plaintiffs opine that "[n]ot contacting cardholders of the alleged suspicious transactions … is absurd." Opposition, at p. 14. Plaintiffs would thus have FNS ask SNAP beneficiaries if they are engaged in what likely amounts to illegal behavior before FNS can make a disqualification determination. *That* is absurd.

other two stores' better inventory. (A.R. 284-86). And FNS confirmed households involved in suspicious transactions were also shopping at larger better-stocked (and cheaper) stores closer to their homes than the Store—but spending more at the Store. (A.R. 287-294). Thus, upon completion of this full investigation and an analysis of the evidence gathered, and only after Plaintiffs were given two opportunities to explain the suspicious transactions and FNS considered such explanations, FNS concluded that Plaintiffs had engaged in trafficking.

In the Opposition, Plaintiffs ignore the fact that the evidence that FNS relied on, and which supports the Motion, is a statutorily authorized basis for finding a trafficking violation. *See* 7 U.S.C. § 2021(a)(2) (regulations may provide criteria for "finding of a violation … on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system"); *see also* 7 C.F.R. § 278.6(a) (same). "Federal courts routinely uphold FNS's permanent disqualifications based on suspicious EBT transaction data." *Shanaa v. United States*, No. 2:15-cv-00042, 2017 WL 2838150, at *3 (E.D. Wis. June 30, 2017); *see also Tony's Pantry Mart Inc. v. United States*, No. 1:15-cv-02967, 2017 WL 514184, at *4 (N.D. Ill. Feb. 8, 2017) ("Federal courts have repeatedly upheld the FNS's permanent disqualification determinations based on similar EBT transaction reports at summary judgment."); *Sharif v. United States*, No. 4:16-cv-00067, 2017 WL 58837, at *3 (N.D. Miss. Jan. 5, 2017) ("[C]ourts have frequently affirmed the disqualification of retail stores based on the statistical analysis of an EBT transaction report."); *see also Idias v. United States*, 359 F.3d 695 (4th Cir. 2004) (affirming summary judgment for United States, stating that "[t]here can also be little question that the United States was entitled to use this sort of documentary evidence to prove that Idias trafficked in food stamps").

In sum, the SNAP EBT transaction data is undisputed. And it was the starting point (and not the finishing line) for a full investigation that confirmed that the Store engaged in trafficking. By statute, permanent disqualification was only available sanction[3] and thus FNS's determination and sanction should be upheld.

### B. PLAINTIFFS HAVE PROVIDED NO EVIDENCE TO CREATE A GENUINE DISPUTE OF MATERIAL FACT AS TO EACH AND EVERY SUSPICIOUS TRANSACTION

In *Toby's Pantry*, *supra*, one court explained what a SNAP plaintiff must show to defeat summary judgment:

> To defeat a motion for summary judgment, the nonmoving party needs to raise material issues of fact as to every alleged violation charged against it. Put differently, because summary judgment may be defeated only when the plaintiff identifies a genuine factual dispute as to each alleged violation, general statements about customer's shopping patterns or other customer practices are not enough create a triable issue of fact. Such specificity is required because permanent disqualification is warranted on the first occasion of coupon trafficking, thus it is Plaintiff's burden to raise material issues of fact as to each of the transactions set forth as suspicious by the FNS.

*Tony's Pantry Mart Inc.*, 2017 WL 514184, at *4 (cleaned up).[4]

Much of the Opposition consists of conclusory arguments and theories. Plaintiff does not cite the Administrative Record a single time. These conclusory and bare-bones arguments track those offered at the administrative phase. (A.R. 304, 389). These naked assertions are precisely the type of "unsubstantiated conjecture [that are] insufficient to create a genuine issue of material

---

[3] Plaintiffs do not argue in the Opposition that, if the Court was to uphold FNS's trafficking determination, that Defendant otherwise erred in imposing a permanent disqualification as a sanction.

[4] "'Cleaned up' is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations." *United States v. Seward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); *see also United States v. White*, 927 F.3d 257, 266 (4th Cir. 2019); *Mayor & City Council of Baltimore v. Trump*, No. 1:18-cv-03636, 2019 WL 4598011, at *20 (D. Md. Sept. 20, 2019).

fact that would preclude summary judgment," because such "general hypotheses to explain the [data] cite no specific examples, provide no data, and do not attempt to account for the specific transactions identified by FNS."[5] *See J & L Liquor, Inc. v. United States*, No. 4:16-cv-10717, 2017 WL 4310109, at *7 (E.D. Mich. Sept. 28, 2017); *see also Eltaweel v. USDA*, No. 1:14-cv-00409, 2016 WL 1572880, at *3 (D.R.I. Apr. 18, 2016) (granting summary judgment where plaintiff provided only "explanations, mimicking those provided to the USDA, for the statistical data collected from the store during the review period that supported the USDA's disqualification" where "[t]hese explanations are unconvincing, conclusory, and speculative in the face of the USDA's statistical evidence").

Plaintiffs also attach affidavits from the Ghalebs, *see* ECF Nos. 17-5, 17-6, in which the owners generally deny trafficking in SNAP benefits. Absent from these affidavits is any explanation regarding any of the 140 transactions FNS identified as suspicious. Courts have consistently held that such self-serving affidavits, which contain mere "conclusory denials of trafficking, unsupported by any demonstrative evidence, cannot withstand summary judgment." *J & L Liquor, Inc.*, 2017 WL 4310109, at *7; *see also Nasunin*, 2013 WL 1687730, at *8 (holding that an affidavit submitted by a store owner, which "lack[ed] supporting documentation or detailed information regarding the suspicious transactions at issue … does not create a genuine issue of material fact sufficient to withstand summary judgment"); *McClain's Mkt. v. United States*, 411 F. Supp. 2d 772, 777 (N.D. Ohio 2005) (holding that a store owner's "affidavit presents no

---

[5]     Even Plaintiffs' conjecture is wrong. For instance, Plaintiffs offer, without a supporting citation, that "most SNAP recipients have multiple children, and may not have transportation to go to a supermarket, hence, the need for Convenience Stores in low-income communities." Opposition, at 6. That may be true, but the Administrative Record reveals that the households engaging in the suspicious activity in this case actually lived closer to a superstore (which is better-stocked and typically has better prices than smaller convenience stores), but nevertheless were shopping at the Store. (A.R. 287-294).

explanation of any of the 149 transactions asserted against plaintiff, but merely presents general justifications for large expenditures," and that such an affidavit could not defeat summary judgment, as "[a]ny one of the 149 transactions is sufficient to establish a violation").[6]

### C. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO TAKE DISCOVERY

Perhaps recognizing that there currently exist no genuine disputes of material fact sufficient to defeat summary judgment, Plaintiffs' chief contention is that "[d]iscovery is necessary in this mater …." Opposition, at p. 8. The Court should reject Plaintiffs' request for discovery.

First, the granting of a pre-discovery motion for summary judgment is not incompatible with the *de novo* provisions of 7 U.S.C. § 2023, as evidenced by the plethora of very recent cases granting such relief. *See, e.g.*, *Green Apple Grocery & Deli*, 2021 WL 533730, at *6; *Negash v. United States*, No. 1:17-cv-01954, 2018 WL 722481, at *4 (D. Md. July 16, 2018); *AJS Petroleum, Inc.*, 2012 WL 683538, at *4-5; *see also See J & L Liquor, Inc.*, 2017 WL 4310109, at *7; *Rosario v. United States*, No. 3:14-cv-00907, 2017 WL 4316093, at *4 (D. Conn. Sept. 27, 2017); *Suuqa Bakaro Grocery v. USDA*, No. 2:16-cv-00254, 2017 WL 3141919, at *5 (D. Me. July 24, 2017); *Shanaa*, 2017 WL 2838150, at *4; *Sky Grocery, LLC v. USDA*, No. 3:15-cv-01082, 2017 WL 1054484, at *6 (D. Conn. Mar. 20, 2017); *Mareida v. United States*, No. 4:13-cv-01124, 2016 WL 7736585, at *4 (S.D. Tex. Aug. 16, 2016); *Fajardo v. United States*, No. 2:15-cv-04790, 2016 WL 4010080, at *4 (C.D. Cal. July 25, 2016); *Savera Super Store, LLC v. United States*, No. 1:14-cv-00554, 2016 WL 55274, at *5. (D.N.H. Jan. 5, 2016).

---

[6] Plaintiffs also attach eighteen declarations from purported Store customers, presumably to make the point that the conduct FNS labeled as suspicious comports with their routine buying habits. *See* ECF No. 17-4. But all of the rapid-and-repetitive transactions FNS identified occurred within thirty-four hours of each other, (A.R. 298-99), so the Store customers' statements that "they make frequent purchasers from the store, some of which happen within" two, three, four, seven, and eight *days* of each other, do not prove that point. *See* ECF No. 17-4, at pp. 2, 3, 4, 5, 7, 12, 13, 14, 15, 17, 18.

Beyond being consistent with the cases cited above, Plaintiffs do not meet their burden of establishing the need for discovery under Rule 56(d). *See Negash v. United States*, 772 F. App'x 34, 35 (4th Cir. 2019) ("[A] court many deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment."). In Plaintiffs' Rule 56(d) declaration, *see* ECF No. 17-3, Plaintiffs seek various data, case studies, training materials, and standard operating procedures. But again, the Plaintiffs bear the burden of raising an issue of material fact as to *each* of the forty-three instances of rapid and repetitive transactions from the same household in a very short period (A.R. 298-99) and ninety-seven excessively large purchases. (A.R. 95-100). Because the sought-after discovery does not deal with Plaintiffs' burden of disproving each of the alleged violations, and Plaintiffs' request in this regard should be denied. *See, e.g.*, *Tikabo v. United States*, No. 4:16-cv-02197, 2017 WL 4112306, at *3 (S.D. Tex. Sept. 18, 2017) (denying a plaintiff's Rule 56(d) request and granting summary judgment, noting that plaintiff "had the burden to show that each of the alleged trafficking violations did not occur," and plaintiff's "Rule 56(d) requests did not match that burden," given that "[n]one of those requests deal with [plaintiff]'s burden of disproving the actual occurrence of each of the alleged violations").

This Court's recent SNAP decisions are instructive with respect to Plaintiffs' requests for discovery. In *Green Apple Grocery & Deli, supra*, 2021 WL 533730, at *6, this Court granted summary judgment over the store's Rule 56(d) request for discovery. The Rule 56(d) declaration in *Green Apple* was not just similar to Plaintiffs' Rule 56(d) declaration filed at ECF No. 17-3—it was almost word-for-word identical. *Compare Green Apple Grocery & Deli v. USDA*, No. 1:19-cv-01408, at ECF No. 33-3; *with* No. 1:20-cv-01346, at ECF No. 17-3. In rejecting the plaintiffs'

request for discovery—again, identical to Plaintiffs' request for discovery here—the Court explained:

> The types of discovery Plaintiffs seek would not create a genuine issue of material fact. While Plaintiffs contend that they are entitled to discover the identities of households whose EBT data was contained in the administrative record in addition to the identities of the comparison stores, Plaintiffs fail to articulate how these identities will create any dispute of material fact as to each of the numerous suspicious transfers that FNS identified…. Plaintiffs simply do not explain how the identities of the households or the comparator stores would generate a factual dispute for this Court to deny summary judgment. Nor do Plaintiffs explain how statistical and investigative case studies relied upon by Defendant would create a dispute of material fact when all statutes and regulations governing the investigation and conduct at issue are publicly available.

The same is true here. Although, in her Rule 56(d) request, Plaintiffs' counsel states generally that "Plaintiffs cannot rebut the Defendant's evidence without th[e] information," and that the "information is very important to Plaintiffs[']s defense," Plaintiffs do not explain how the requested information could raise a dispute of material fact as to the 140 suspicious transactions at issue. *See Negash v. United States*, No. 1:17-cv-01954, 2018 WL 3428716, at *4 (D. Md. Feb. 5, 2018) (denying reconsideration and rejecting a store's contention that it "is entitled to discovery the identities of households whose EBT data was contained in the administrative record in addition to the identities of the comparison stores," and holding that "the types of discovery [plaintiff] seeks would not create a genuine issue of material fact," where plaintiff "fails to articulate how these identities will create any dispute of material fact as to each of the hundreds of suspicious transfers that FNS identified"); *AJS Petroleum, Inc.*, 2012 WL 683538, at *5 (denying plaintiff's request to allow discovery to proceed, explaining that "the administrative record and other evidence appended to the parties' briefs provide a sufficient factual foundation" for summary judgment, and "additional discovery would not change the factual landscape in this case").

Plaintiffs have had opportunities to respond to FNS's determination that the Store had trafficked in SNAP benefits—first, in response to the Charge Letter; second, in seeking review with the FNS Administrative Review Branch; and third, in the Opposition. Aside from the conclusory and bare-bones denials, (A.R. 304, 389), the only "evidence" Plaintiffs could produce were (i) store photos, which demonstrated that the Store's inventory was nothing other than that of a typically stocked convenience store (A.R. 305-21); (ii) invoices and bank records, which demonstrated only that the Store may have had sufficient inventory (A.R. 332-77, 382-83); and (iii) register receipts, which lacked any information about the transactions because they were only dollar amounts without itemization. (A.R. 322-31). As in this Court's *Green Apple*, *Negash*, and *AJS Petroleum, Inc.* cases, the Administrative Record here proves that there is no genuine dispute of material fact as to each of the hundred-plus challenged transactions, that Defendant is entitled to judgment as a matter of law, and that "additional discovery would not change the factual landscape in this case …." *See AJS Petroleum, Inc.*, 2012 WL 683538, at *5.

### D. PLAINTIFFS' INABILITY TO EXPLAIN THE STORE'S PRECIPITOUS DECLINE IN SUSPICIOUS EBT TRENDS IMMEDIATELY AFTER ISSUANCE OF THE CHARGE LETTER FURTHER EVIDENCES TRAFFICKING

Plaintiffs have denied FNS's determination—reached after analyzing EBT data, conducting a store visit and comparing the Store's EBT data with convenience stores in the immediate geographic proximity—that the Store engaged in the illegal trafficking of SNAP benefits. As explained in the Motion and in this Reply, these denials do not create a dispute of material fact sufficient to defeat summary judgment.

It is telling, however, that Plaintiffs have not addressed one trend that the Administrative Review Branch relied on in sustaining FNS's decision to disqualify the Store permanently. That is, FNS analyzed EBT data for the six-month period from April through September 2019 (the

"Analysis Period"), and, on November 27, 2019, FNS sent the Charge Letter to the Plaintiffs. (A.R. 295-97). Notably, (i) the number of repetitive transaction in a set period by the same household/account dropped to zero in December 2019 (the month after the Store received the Charge Letter); and (ii) the number of excessively-large transactions went from an average of 16.17 per month during the Analysis Period to nine in December 2017 (a 45% decline). (A.R. 384). The precipitous decline in the number of suspicious transactions following the Store's receipt of the Charge Letter—which Plaintiffs have failed to address—can only be explained as a compliance response and a reduction of violative of activity, and further evidences that the Store illegally trafficked in SNAP benefits. *See Negash*, 2018 WL 722481, at *4 ("[T]he court points out that [plaintiff] has not attempted to explain the clearest evidence that trafficking occurred, namely, that the number of suspicious transactions diminished sharply and precipitously once he learned the FNS suspected him of trafficking…. Absent any explanation to the contrary, the court draws the only logical conclusion possible based on this evidence: … the Store w[as] trafficking in EBT benefits."); *Dollar Plus Food Mart LLC v. United States*, No. 2:13-cv-00193, 2015 WL 11090898, at *6 (D. Ariz. May 8, 2015) (granting summary judgment for the United States where plaintiff "has not explained," among other things, "why SNAP transactions decreased dramatically after [the store] received the Charge Letter").

### III. PLAINTIFFS' DUE PROCESS CLAIMS FAIL

In the Motion, Defendant cited any number of cases holding that the SNAP-disqualification scheme comports with substantive and procedural due process principles. *See* Motion, at pp. 21, 22, 29. In the Opposition, Plaintiffs do not mention that caselaw, cite caselaw to the contrary, or otherwise distinguish that caselaw. As Defendant argues in the Motion, and for the reasons the cited cases explain, Plaintiffs' due process claims lack merit.

## IV. CONCLUSION

For the reasons set forth above and those appearing in the Motion and Administrative Record, the Defendant requests that the Court grant the Motion and either dismiss the Complaint or grant summary judgment in its favor as to all claims.

Respectfully submitted,

Jonathan M. Lenzner
Acting United States Attorney

By: _____/s/_____
Alan C. Lazerow (Bar No. 29756)
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
Alan.Lazerow@usdoj.gov

OF COUNSEL:
Virginia Henning
Attorney Advisor
United States Department of Agriculture
Office of the General Counsel
Harrisburg, Pennsylvania 17108